In the Matter of ELIZABETH HOLTZMAN, as District Attorney of Kings County, Petitioner, v JULIUS HELLENBRAND, as Justice of the Supreme Court, Respondent, NEIL SIROIS, Defendant-Respondent.

Second Department, March 24, 1983

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Bridget Farrell* of counsel), for respondent.

*Frank J. Santo, P. C. (Martin B. Adelman* of counsel), for defendant-respondent.

*Elizabeth Holtzman, District Attorney (Lucille DiBello* of counsel), petitioner *pro se.*

OPINION OF THE COURT

*Per Curiam.*

In this original proceeding pursuant to CPLR article 78, the petitioner District Attorney of Kings County seeks a writ of mandamus directing the respondent Justice to (1) conduct a hearing in the case of *People v Sirois* (Indictment No. 4686/80) to determine whether the defendant Neil Sirois by his misconduct induced Adele Sirois, a People's witness, to unlawfully refuse to testify at said trial despite a grant of immunity, and upon a determination of misconduct on the part of the defendant, to allow the People to introduce the Grand Jury testimony of Adele Sirois as direct evidence at trial and (2) grant the petitioner a 30-day adjournment of the trial or until such time as the witness, Adele Sirois, purges herself of criminal contempt, whichever is sooner.

BACKGROUND

The defendant-respondent Neil Sirois was charged under Kings County Indictment No. 4686/80 with the crime of murder in the second degree. The indictment arose out of the fatal shooting of one Raymond Cutolo on December 6, 1980. The uncontroverted facts in the petition allege that on that date at approximately 11:30 P.M., Adele Sirois, the estranged wife of the defendant, was with Cutolo as they left a restaurant in Brooklyn and walked to Cutolo's car. Mrs. Sirois observed the defendant approach Cutolo with a gun in his hand and saw the two men scuffle. She ran from the scene, and while fleeing, she heard a gunshot. The following morning Cutolo was found dead in a nearby vacant lot, with multiple gunshot wounds.

Thereafter, Mrs. Sirois testified against her husband, before the Grand Jury, which indicted him for murder in the second degree. However, subsequent to her appearance and testimony before the Grand Jury, Mrs. Sirois advised an Assistant District Attorney that she wished to recant a part of her testimony and reconcile with defendant. Thereafter, she fled the jurisdiction.

On April 20, 1982 the Supreme Court, Kings County, dismissed the indictment on the ground that the People had deprived defendant of his constitutional right to a speedy trial. The People appealed, and this court, by order dated February 28, 1983, reversed the order of the Supreme Court and reinstated the indictment (see *People v Sirois,* 92 AD2d 618).

On March 1, 1983 Adele Sirois was arrested on a material witness order in Brooklyn, where she was residing with defendant under an assumed name. On March 2, 1983 the People brought Mrs. Sirois before Criminal Term for arraignment on the material witness order, but the court refused to hold her on that order, and released her without bail.

The case of *People v Sirois* was sent to a Trial Part and on the morning of March 15, 1983 jury selection was completed. Mrs. Sirois was present in court on that day, and the jury was sworn. The respondent Justice then conducted an *in camera* hearing to discover whether the witness would invoke her Fifth Amendment privilege at trial. The witness refused to answer any questions at the hearing, and after being offered transactional immunity, persisted in her refusal to testify. The court ultimately held her in contempt of court (see Judiciary Law, § 750, subd A, pars 1, 5) and sentenced her to serve 30 days in jail and pay a fine of $250.

Thereafter, the People requested an adjournment of the trial for 30 days, or until such time as Mrs. Sirois purged herself of the contempt, whichever was sooner. The respondent Justice refused the People's request for an adjournment noting that (1) the People should have foreseen that Mrs. Sirois would not testify despite the grant of transactional immunity, (2) incarceration would probably not induce Mrs. Sirois to testify and (3) a 30-day adjournment would place an undue burden on the court and the defendant.

The People then moved for a hearing on the authority of *United States v Mastrangelo* (693 F2d 269) to determine whether defendant, by his misconduct, had induced his wife to unlawfully refuse to testify at trial. The People

argued that, upon an affirmative finding on that issue, pursuant to *Mastrangelo (supra)*, Mrs. Sirois' Grand Jury testimony should be admitted as direct evidence at her husband's murder trial.

The respondent Justice refused to conduct such a hearing, holding, *inter alia,* that under the applicable statutes and case law of New York State, Mrs. Sirois' Grand Jury testimony could not be admitted as direct evidence under any circumstances. The instant proceeding pursuant to CPLR article 78 then followed.

The threshold issue to be determined is whether mandamus lies to undo the alleged errors committed by the respondent Justice, which may "be assumed to have been prejudicial to the rights of the *People* who instituted the special proceeding" (*Matter of State of New York v King,* 36 NY2d 59, 61; emphasis added). The determinative factors regarding the propriety of writs of mandamus in criminal cases was clearly set forth by the Court of Appeals in *Matter of State of New York v King (supra,* pp 62, 64) as follows:

"The extraordinary remedy either of prohibition or mandamus lies only where there is a clear legal right, and in the case of prohibition only when a court (if a court is involved) acts or threatens to act without jurisdiction in a matter of [*sic*] over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction (see, e.g., *Proskin* v. *County Ct. of Albany County,* 30 NY2d 15, 18; *Matter of Lee* v. *County Ct. of Erie County,* 27 NY2d 432, 436-437; *Matter of Hogan* v. *Culkin,* 18 NY2d 330, 335-336) * * *

"It would not be fruitful at this time to detail the several categories of excesses of jurisdiction and power arising in criminal actions, which merit the abrupt intervention of prohibition or mandamus. They always invoke * * * an unlawful use or abuse of the entire action or proceeding as distinguished from an unlawful procedure or error in the action or proceeding itself related to the proper purpose of the action or proceeding."

The extraordinary writs of mandamus and prohibition cannot be used to prevent trial or litigation errors of substantive law or procedure (*La Rocca v Lane,* 37 NY2d

575). Indeed, if these extraordinary writs were allowed to be used to correct such errors, there would be, in the words of Chief Judge BREITEL in *Matter of State of New York v King* (*supra,* pp 63-64): "innumerable proceedings in all sorts of criminal matters to review allegedly prejudicial errors of law for which there would be no eventual appellate review or only appellate review after final judgments, and then only of conviction. No trial can be conducted while appellate courts by their own protracted proceedings review the alleged errors which may arise preliminary to the trial, during the trial, and before verdict and judgment. Such a system is neither civilized nor even rational. And most certainly it would make speedy trial a legal impossibility." Applying these principles to the instant proceeding leads to the inevitable conclusion that mandamus does not lie in the instant matter.

With respect to the court's failure to grant an adjournment to the People, such an act was within the court's discretion in administering its calendar, and does not rise to the level necessary to allow the issuance of a writ of mandamus. The trial court's refusal to grant a hearing on the issue of the defendant's alleged misconduct which induced his wife to unlawfully refuse to testify, was based on a ruling that her Grand Jury testimony could not be admitted under any circumstances under applicable New York law. Clearly, this was an evidentiary ruling issued during trial, which also cannot be challenged by way of a writ of prohibition or mandamus (see *Matter of State of New York v King,* 36 NY2d 59, *supra*).

The instant proceeding, seeking a writ of mandamus, must be dismissed. Nevertheless, in view of the fact that the petitioner's papers in support of the application present a very serious and compelling issue, and bearing in mind that the People do not have the right to appeal from the determination, we address the issue at this juncture to insure proper guidelines for the future (see *Matter of Poughkeepsie Newspapers v Rosenblatt,* 92 AD2d 232).

Defendant Sirois has been charged with the serious crime of murder in the second degree. A crucial, if not indispensable, witness for the People is defendant's estranged wife, who testified against him before the Grand

Jury but later changed her mind and currently refuses to testify.

With this in mind, we turn to the respondent Justice's denial of the People's application, under the authority of *United States v Mastrangelo* (693 F2d 269, *supra*), for a hearing to determine whether the defendant by his misconduct induced his wife to unlawfully refuse to testify at trial. In *Mastrangelo,* defendant was prosecuted, *inter alia,* for conspiring to import and to possess with intent to distribute substantial amounts of marihuana. The sole link between defendant and the drug conspiracy was supplied by one James Bennett, who testified before the Grand Jury on April 2, 1979. The trial of defendant began on April 27, 1981. On April 29, 1981, while on his way to the courthouse to testify, Bennett was shot dead in the street by two men. The Trial Judge declared a mistrial as to Mastrangelo and subsequently denied Mastrangelo's motion to bar reprosecution on the grounds of double jeopardy. In so holding, the Trial Judge stated (*United States v Mastrangelo,* 662 F2d 946, 950-951, cert den 456 US 973): "I was under the distinct impression, and I believe that by a preponderance of the evidence, based on what I then had before me, I was warranted in finding that this defendant, Mastrangelo, either directly arranged for the killing of the witness or was advised of the possible killing of the witness and acquiesced. He was the only person that could gain from it * * * And that, it seems to me, is the clearest situation of a finding of manifest necessity that you can get." On appeal from the District Court's decision, the defendant argued that a finding of manifest necessity as the basis of a declaration of a mistrial could not be made without a full hearing. The Second Circuit Court of Appeals rejected defendant's argument and held (*United States v Mastrangelo,* 662 F2d 946, 951-952, *supra*): "The test, therefore, is not whether the defendant was in fact involved in the witness's death, nor even whether under a preponderance of the evidence or some lesser evidentiary standard the court finds it probable that the defendant has participated in the murder. To make such a determination would require a delay in the trial of weeks or even months that would itself ultimately require a mistrial; the jurors'

minds would no longer be fresh and, even worse, the reasons for the delay might have become evident to one or more of them. Rather, the test must be simply whether at the time the trial judge is faced with the question he reasonably concludes that there is a distinct possibility that the defendant participated in making the witness unavailable, at least where, as here, the Government is totally without fault and the case cannot proceed and the ends of justice be served by the evidence already introduced or otherwise available to the Government."

Prior to Mastrangelo's second trial, the government moved for the admission of Bennett's Grand Jury testimony under rule 804 (subd [b], par [5]) of the Federal Rules of Evidence, the residual exception to the hearsay rule, which provides: "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant." Mastrangelo opposed the motion on the ground that said rule did not permit the use of such testimony and that even if admitted as an exception to the hearsay rule, its admission would be prohibited by the confrontation clause of the Sixth Amendment. The District Court held that Bennett's Grand Jury testimony did not violate the confrontation clause and also met the requirements of rule 804 (subd [b], par [5]) of the Federal Rules of Evidence (see *United States v Mastrangelo,* 533 F Supp 389).

Defendant was subsequently convicted after a jury trial. On appeal, he argued that the Grand Jury testimony of the

deceased witness was inadmissible hearsay, i.e., it did not meet the standards set forth in rule 804 (subd [b], par [5]), and that even if it did satisfy the standards in said rule, its admission violated his Sixth Amendment right of confrontation. The Second Circuit held that (1) the District Court's finding of manifest necessity in declaring a mistrial "raise[d] an issue as to whether Mastrangelo waived his sixth amendment rights and, *a fortiori,* his hearsay objection" (*United States v Mastrangelo,* 693 F2d 269, 272, *supra*), (2) that a waiver, if factually supported, would allow the court to "avoid resolution of the difficult legal and constitutional issues arising under the confrontation clause and Rule 804(b) (5)" (*supra,* p 272), and (3) a remand to the District Court was appropriate for an evidentiary hearing on the question of Mastrangelo's misconduct, i.e., his involvement in the murder of Bennett. In discussing the legal precedents and strong public policy considerations behind this particular application of the principle of waiver, the Second Circuit held (*United States v Mastrangelo, supra,* pp 272-273): "The Supreme Court has recognized on several occasions that the right of confrontation may be waived not only by consent, but 'at times even by misconduct.' *Snyder v. Massachusetts,* 291 U.S. 97, 106 * * * *Diaz v. United States,* 223 U.S. 442, 452-53 * * * cf. *Illinois v. Allen,* 397 U.S. 337, 342-43 * * * (disruptive conduct in courtroom); *Reynolds v. United States,* 98 U.S. 145, 159 * * * (defendant's conduct rendered witness unavailable for trial). As the Court stated in *Diaz,* 223 U.S. at 458 * * * (quoting with approval *Falk v. United States,* 15 App. D.C. 446, 460, *cert. denied,* 181 U.S. 618 * * * 'Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong.' Thus, if a witness' silence is procured by the defendant himself, whether by chicanery, *United States v. Mayes,* 512 F.2d 637, 648-51 (6th Cir.), *cert. denied,* 442 U.S. 1008 * * * by threats, *United States v. Balano,* 618 F.2d 624, 628-29 (10th Cir. 1979), *cert. denied,* 449 U.S. 840 * * * *United States v. Carlson,* 547 F.2d 1346 (8th Cir. 1976), *cert. denied,* 431 U.S. 914 * * * or by actual violence or murder, *United States v. Thevis,* 665 F.2d 616, 630-31 (5th Cir.), *cert. denied,* __ U.S. __, 103 S. Ct. 57 * * * the defendant cannot

then assert his confrontation clause rights in order to prevent prior grand jury testimony of that witness from being admitted against him. Any other result would mock the very system of justice the confrontation clause was designed to protect."

On the "more difficult" issue of the appropriate burden of proof to which the People should be held to at such a hearing, the Second Circuit adopted the preponderance of evidence test,[1] holding as follows (*United States v Mastrangelo,* 693 F2d, at pp 272-273):

"The issue of the burden of proof in the waiver hearing is more difficult. While it is clear that the government bears the burden, the weight of that burden is in doubt. Other courts have divided on the issue; while *Balano* held that waiver might be shown by a preponderance of the evidence, *Thevis* applied the more stringent 'clear and convincing' test. Moreover, the Supreme Court precedents are mixed. While the Court has held the preponderance of evidence test applicable to suppression hearings involving possible misconduct by the government, *Lego v. Twomey,* 404 U.S. 477, 489 * * * (voluntariness of confession); *United States v. Matlock,* 415 U.S. 164, 177-78 * * * (consent to search), it has applied the clear and convincing standard to questions of admissibility involving constitutional requirements going to the reliability of evidence, *United States v. Wade,* 388 U.S. 218, 240 * * * (circumstances surrounding identification at a showup).

"These decisions are thus not dispositive. Since the right of confrontation is closely related to the reliability of testimonial evidence, the clear and convincing test may well apply to issues of admissibility arising under it. However, waiver by misconduct is an issue distinct from the underlying right of confrontation and not necessarily governed by the same rules concerning burden of proof. We see no reason to impose upon the government more than the usual burden of proof by a preponderance of the evidence

1. Although it adopted the preponderance of evidence test, the Second Circuit suggested, apparently in deference to the concurring member of the court who was "in doubt as to the appropriate burden of proof in respect to waiver", that "the trial judge make findings under the clear and convincing standard as well" (*United States v Mastrangelo,* 693 F2d 269, 274).

where waiver by misconduct is concerned. Such a claim of waiver is not one which is either unusually subject to deception or disfavored by the law. *Compare* McCormick, *McCormick's Handbook on the Law of Evidence* § 340 (2d ed. 1972). To the contrary, such misconduct is invariably accompanied by tangible evidence such as the disappearance of the defendant, disruption in the courtroom or the murder of a key witness, and there is hardly any reason to apply a burden of proof which might encourage behavior which strikes at the heart of the system of justice itself.

"We therefore remand this case to the District Court for a hearing on the issue of Mastrangelo's participation in Bennett's murder. If the District Court finds that Mastrangelo was in fact involved in the death of Bennett through knowledge, complicity, planning or in any other way, it must hold his objections to the use of Bennett's testimony waived. Bare knowledge of a plot to kill Bennett and a failure to give warning to appropriate authorities is sufficient to constitute a waiver."

■ In New York, there is no question that Mrs. Sirois' prior Grand Jury testimony does not come within the relevant statutory exception to the hearsay rule regarding the use of prior testimony in a criminal proceeding. CPL 670.10 lists only three exceptions, to wit:

"§ 670.10 Use in a criminal proceeding of testimony given in a previous proceeding; when authorized.

"1. Under circumstances prescribed in this article, testimony given by a witness at (a) a trial of an accusatory instrument, or (b) a hearing upon a felony complaint conducted pursuant to section 180.60, or (c) an examination of such witness conditionally, conducted pursuant to article six hundred sixty, may, where otherwise admissible, be received into evidence at a subsequent proceeding in or relating to the action involved when at the time of such subsequent proceeding the witness is unable to attend the same by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court. Upon being received into evidence, such testimony may be read and any videotape or photographic recording thereof played. Where any record-

ing is received into evidence, the stenographic transcript of that examination shall also be received" (see, also, *People v Harding,* 37 NY2d 130).

Nevertheless, the principle of waiver of objections to the admissibility of evidence, based on a party's misconduct, as set forth in *Mastrangelo (supra),* is as relevant to cases arising in our State courts as it is in the Federal system.

Accordingly,

(1) whenever the People allege specific facts which demonstrate a "distinct possibility" (*United States v Mastrangelo,* 662 F2d 946, 952, *supra*), that a criminal defendant's misconduct has induced a witness' unlawful refusal to testify at trial or has caused the witness' disappearance or demise, the People shall be given the opportunity to prove that misconduct at an evidentiary hearing;

(2) at said hearing the burden shall be upon the People to prove defendant's misconduct by clear and convincing evidence (see, also, *United States v Thevis,* 665 F2d 616, cert den __ US __, 103 S Ct 57);[2] and

(3) upon an affirmative finding by the court on the issue of defendant's misconduct, the defendant will be deemed to have waived any objection to the admissibility of the witness' prior Grand Jury testimony and said testimony may be admitted as direct evidence at the defendant's trial.

Although we are dismissing the instant proceeding for a writ of mandamus, we hope that the guidelines set forth herein will serve to protect the rights of defendants in criminal cases as well as those of the general public.

MANGANO, J. P., THOMPSON, GULOTTA, WEINSTEIN and RUBIN, JJ., concur.

The proceeding is dismissed, without costs or disbursements, and the stay heretofore granted by order of this court dated March 16, 1983 is hereby vacated.

---

2. In view of the mandate of our State Legislature to exclude the use of the witness' Grand Jury testimony as direct evidence in a criminal trial due to its hearsay quality, the clear and convincing test is more appropriate than the preponderance of evidence test in establishing a waiver of an objection to the admissibility of said testimony into evidence (cf. Fed Rules Evid, US Code, tit 28, rule 804, subd [b], par [5]; *United States v Mastrangelo,* 693 F2d 269).