■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERRICK HAMILTON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Lombardo, J.), rendered December 7, 1983, convicting him of murder in the second degree, manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court, which, after a hearing, granted the People's motion to use the Grand Jury testimony of one Patricia Lee as direct evidence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

On appeal, the defendant contends that he was denied his 6th Amendment right to confront the witnesses against him when the trial court, after a hearing, ruled that the People could use the Grand Jury testimony of one Patricia Lee as direct evidence against him at the trial. Lee gave incriminating testimony against the defendant before the Grand Jury, but prior to the trial she informed the defendant's attorney that her Grand Jury testimony was not true and had been the result of coercion by the police. Upon being questioned by the court, Lee stated that she would invoke her 5th Amendment right against self-incrimination if called to testify at the trial. The People alleged that Lee's refusal to testify was the result of misconduct by or on behalf of the defendant. Having found this to be a possibility, the trial court granted the People's request to conduct a hearing pursuant to *United States v Mastrangelo* (693 F2d 269, *cert denied* 467 US 1204) and *Matter of Holtzman v Hellenbrand* (92 AD2d 405), to determine whether the defendant waived his right to confrontation by allegedly causing Lee's unavailability to testify at the trial.

At the conclusion of the hearing, the trial court, recognizing that the prosecution bore the burden of proving by clear and convincing evidence that misconduct by or on behalf of the defendant caused Lee's refusal to testify, found that while "[t]here's a lot of suspicion, a lot of innuendo, a lot of inferences * * * The Court has heard no relevant testimony. The Court is not convinced; as a matter of fact, the proof here is far from clear and convincing". Thus, the prosecution's motion

to use Lee's Grand Jury testimony as direct evidence at the trial was denied.

When the trial court convened the following day, the Trial Judge stated, outside the presence of the jury, that he was "troubled" by his ruling of the previous day regarding the admissibility of Lee's Grand Jury testimony. The Trial Judge explained that he had reviewed the prior hearing testimony of Lee and had come to the conclusion that Lee must have been "tampered" with by the defendant or someone on his behalf. Accordingly, the trial court ruled that the prosecution would be permitted to utilize Lee's Grand Jury testimony as direct evidence against the defendant. At defense counsel's request, the court stated that it would allow the *Mastrangelo* hearing to be reopened during the course of the trial to permit counsel to further explore the possibility of police misconduct.

During the course of the trial, the hearing was reopened and the court heard testimony from Detective Adrian Rosario and the Assistant District Attorney assigned to prosecute the case. The detective denied that the police coerced Lee into incriminating the defendant before the Grand Jury. The Assistant District Attorney also testified that Lee had been upset when a subpoena was served at her mother's house in the presence of her sister, who was a former girlfriend of the defendant. According to the Assistant District Attorney, Lee apparently expressed some fear of possible reprisals from the defendant. Significantly, however, Lee testified for a second time during the *Mastrangelo* hearing and again denied that any threats were ever made to her by the defendant or his family. Lee stated that she incriminated the defendant before the Grand Jury because of threats from the police. Following the reopened hearing, the trial court ruled that it would adhere to its determination permitting the prosecution to introduce Lee's Grand Jury testimony as direct evidence against the defendant. We disagree with the trial court's ruling and accordingly reverse.

It is true that "great weight must be accorded the determination of the hearing court with its particular advantages of having seen and heard the witnesses *(People v Prochilo,* 41 NY2d 759, 761), and that determination should not be disturbed where it is supported by the record" *(People v Gee,* 104 AD2d 561). However, at bar, the hearing court's ultimate determination cannot be sustained since it clearly is not supported by the evidence, but rests solely upon speculation and conjecture which, at best, may rise to the level of suspicion as to the defendant's involvement in Lee's refusal to

testify. As the hearing court initially noted, however, suspicion does not constitute the clear and convincing evidence which is necessary in order to find a waiver by the defendant of his right to confrontation *(see, Matter of Holtzman v Hellenbrand,* 92 AD2d 405, *supra).* Circumstantial evidence, where present, may be sufficient to sustain a finding that a defendant or someone on his or her behalf has been involved in tampering with a witness so as to justify the admissibility of the witness's prior Grand Jury testimony. Here, however, the hearing court offered no evidentiary basis for recalling its original decision, and this court is unable to find clear and convincing evidence in the record to support that ruling. While the People and the dissent make much of the fact that there was proof of contact between Lee and the defendant's family, the record indicates that such contact was initiated by Lee, and she emphatically denied that any threats were ever made by the defendant or any member of his family.

In sum, the fact that the defendant derives substantial benefit from the witness's refusal to testify, combined with the lack of evidence of tampering by the police, does not constitute clear and convincing evidence that misconduct by or on behalf of the defendant caused that refusal. The fact remains that there was no affirmative evidence whatsoever to support a finding that either the defendant or any member of his family tampered with this witness. Thus, the court erred in finding a waiver of the defendant's right to confrontation and in granting the People's request to use Lee's Grand Jury testimony as direct evidence at the trial. Contrary to the People's assertions on appeal, this error cannot be deemed harmless as the proof of the defendant's guilt is far from overwhelming, and it cannot be said that there is no reasonable possibility that Lee's Grand Jury testimony contributed to the defendant's conviction *(see, People v Crimmins,* 36 NY2d 230).

We have considered the defendant's remaining contentions, including those raised in his *pro se* brief, and find them to be either without merit or unpreserved for our review *(see, People v Lipton,* 54 NY2d 340). Mollen, P. J., Lawrence and Kunzeman, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment of conviction, with the following memorandum: I cannot agree with the majority's conclusion that the defendant was denied his right to confrontation by the admission into evidence of the testimony of Patricia Lee, a witness who, at the trial, invoked her 5th Amendment right against self-incrimination.

As per my view of the record, the charge that the hearing court's ultimate determination "rests solely upon speculation and conjecture which, at best, may rise to the level of suspicion as to the defendant's involvement in Lee's refusal to testify" is unwarranted.

The substance of Ms. Lee's Grand Jury testimony was that she had observed the defendant standing in front of the parking lot of the housing project in which they both resided at some time between 5:00 and 5:30 A.M. on March 8, 1983. At that time, the defendant was speaking with another individual and putting a black gun inside his waistband. Ms. Lee next saw the defendant on the afternoon of March 9, 1983, at which time she initiated a conversation with him. She told him that "the bread man" was dead. The defendant initially expressed disbelief and told Ms. Lee not to worry about it. When she asked him what he meant, the defendant responded that he had panicked and thought that he shot the man in the arm.

Significantly, Ms. Lee did not claim to have seen the defendant actually commit the crime. Nor did she testify that the defendant admitted having shot the victim, the driver of a bakery truck, in the chest twice. Assuming, arguendo, that her story regarding the police threats is worthy of credibility, it is ironic that such a peripheral way of falsely accusing an individual of murder was chosen. It seems likely that the police would have devised a stronger case against the defendant if indeed there was fabrication. Under the circumstances, it is not surprising that the court afforded credibility to Ms. Lee's Grand Jury testimony rather than to her subsequent hearing testimony.

By way of affirmative evidence, the Assistant District Attorney in charge of prosecuting the instant case testified regarding his receipt of a telephone call from Ms. Lee wherein she expressed a fear of reprisal from the defendant and his family. At the time of the call, Ms. Lee was outside the jurisdiction. She claimed to have been upset that subpoenas were sent to her Brooklyn residence since she did not want her younger sister, a former girlfriend of the defendant, to know about her involvement in this case.

While direct evidence of the defendant's involvement in Ms. Lee's refusal to testify is scant, it must be borne in mind that the determination of a hearing court, with its peculiar advantage of having seen and heard the witnesses first hand, is entitled to great deference on appeal (see, People v Prochilo, 41

NY2d 759, 761; *People v Gairy,* 116 AD2d 733, 734). The essential issue is one of credibility, which is clearly a matter best left to the determination of the trier of facts *(see, People v Malizia,* 62 NY2d 755, 757, *cert denied* 469 US 932; *People v Bauer,* 113 AD2d 543). Where, as here, the only reasonable explanation which the record supports is that Ms. Lee's reticence at the trial was attributable to pressure exerted by the defendant and/or his family, the hearing court's determination should not be disturbed inasmuch as it is not clearly erroneous *(see, People v Armstead,* 98 AD2d 726).

I further disagree with the majority's conclusion that proof of the defendant's guilt was far from overwhelming. The record reveals that the defendant, on the morning of the felony murder, approached one Glenn Matthews and expressly asked to rent a car for the purpose of robbing a bread truck. Later that morning, an eyewitness saw three black males shoot a truck driver before fleeing in a burgundy colored car. Subsequently, the defendant returned Matthews's car and revealed that he had committed a "stickup" in which he had had to shoot someone. In view of the compelling evidence of guilt and the equivocal nature of Ms. Lee's Grand Jury testimony, I conclude that while the Grand Jury testimony may well have provided further evidence of the defendant's guilt, any alleged error surrounding its admission was harmless inasmuch as the People's case would not have been significantly less persuasive had it been excluded *(see, Schneble v Florida,* 405 US 427, 432).

Furthermore, the prosecutor did not abuse his discretion when he declined to offer Lee immunity, as there was no indication that Lee's decision to invoke her right against self-incrimination was in any way the result of intimidation on the part of the prosecutor *(cf., People v Shapiro,* 50 NY2d 747), and Lee was not an agent of law enforcement authorities or otherwise a part of the prosecutorial apparatus *(see, People v Arroyo,* 46 NY2d 928; *People v Sapia,* 41 NY2d 160, *cert denied* 434 US 823).

Finally, although some of the remarks made by the prosecutor during his summation would have been better left unsaid, they cannot be said to have deprived the defendant of his right to a fair trial *(see, People v Roopchand,* 107 AD2d 35, *affd* 65 NY2d 837).

Having found the remainder of the defendant's arguments to be totally devoid of merit, I vote to affirm the judgment of conviction.