OPINION OF THE COURT
Herbert J. Lipp, J.
The defendant is charged with murder in the second degree for the alleged killing of one Abraham Lodge. A Sirois[1] hearing was ordered by the Honorable Justice Francis X. Egitto and the case was transferred to this court for said hearing. This decision supplements the oral decision given by this court at the conclusion of the hearing.
A Sirois hearing is generally granted whenever the People allege specific facts which demonstrate a " 'distinct possibility’ * * * that a criminal defendant’s misconduct has induced a witness’ unlawful refusal to testify * * * or has caused the witness’ disappearance or demise” (Matter of Holtzman v Hellenbrand, 92 AD2d 405, 415, supra).
At the hearing, the burden of proof is on the People to prove by clear and convincing evidence that the defendant’s misconduct caused the unavailability of the witness — in this case, by the death of Desmond Edwards. If the People meet their burden, the witness’ previous statement may be admitted at the trial. At the present hearing, two issues arose, the first an issue of law, the second of fact: (1) to date, the reported decisions of New York courts all involved the admissibility of previous Grand Jury testimony; do the same principles apply to other kinds of statements, such as, in this case, a sworn audio-taped statement; (2) have the People met their burden of proof?
FINDINGS OF FACT
Detective John Guinane was assigned to investigate the murders of both Abraham Lodge in 1991 and Desmond Edwards in 1993. His testimony at the hearing was candid, credible and reliable. On August 6, 1991, he spoke to a number of witnesses, including Desmond Edwards. Detective Guinane knew Mr. Edwards to be a police informant who had provided accurate information for about one year. After the interview by Detective Guinane, Detectives Turner and Regina conducted a more complete interview of Mr. Edwards.
*541 At 5:00 p.m., on August 6, 1991, at the Kings County District Attorney’s office, Assistant District Attorney Terry Winston taped a sworn statement by Mr. Edwards in which the latter implicated the defendant in the shooting death of Abraham Lodge.
On January 2, 1993, Desmond Edwards and Ronald Johnson were patronizing a bar located on Rogers Avenue, in Brooklyn. At some point, Mr. Edwards was asked to go outside the bar, in an apparent ruse to separate him from Mr. Johnson. Once outside, Mr. Edwards was fatally shot four to five times by bullets fired from a Tech-9 pistol.
The defendant was indicted in 1994 for the murder of Abraham Lodge.
In 1995, Detective Guinane was informed that an inmate at Rikers Island, Kevin Jennings, had information regarding the killing of Desmond Edwards. Detective Guinane and Assistant District Attorney Alysia Baker met with Mr. Jennings on three separate occasions.
During the course of these interviews, Mr. Jennings described in great detail what he had allegedly learned from the defendant at Rikers Island regarding the death of Desmond Edwards. In summary, Mr. Jennings informed Detective Guinane and Ms. Baker that the defendant allegedly contacted an individual he knew and ordered that individual to kill Desmond Edwards. Despite claiming that he was assisting the defendant in some legal matters, Mr. Jennings never gave Detective Guinane any documents to corroborate his alleged discussions with the defendant.
Detective Guinane verified that both the defendant and Kevin Jennings were incarcerated in the same facility and had the ability to communicate with each other. Detective Guinane never disclosed to Mr. Jennings any of the details of the Lodge and Edwards homicides or any of the contents of Mr. Edwards’ audiotape.
During his testimony, Detective Guinane candidly admitted that the only credible information he has relative to the defendant’s role in the death of Desmond Edwards is the information furnished to him by Kevin Jennings. Detective Guinane had heard rumors and has investigated possible leads relating to Desmond Edwards’ killing, but he has not produced sufficient evidence to charge anyone, even the defendant, with the death of Desmond Edwards.
Kevin Jennings was the People’s main witness at the Sirois hearing. Mr. Jennings is currently incarcerated on a burglary *542 charge for criminally impersonating a cable employee in order to gain access to the victim’s home. Mr. Jennings also is being held for violating the terms of his parole on a prior gun conviction and concedes he has been convicted on several occasions for "sucking tokens” out of Transit Authority turnstiles. Defendant admits having a number of prior bench warrants and manipulating the legal system to obtain a "package deal” upon a subsequent arrest and the execution of the outstanding bench warrant.
Mr. Jennings testified that he and the defendant were previously incarcerated at the Otis Barum Correctional Center at Rikers Island. Mr. Jennings was housed at 1 West, Cell 3; the defendant was housed at 1 West, Cell 49. Although Mr. Jennings had never previously met the defendant, in March of 1995, the defendant allegedly approached Mr. Jennings and asked him if he would assist the defendant in writing a letter to defendant’s lawyer attacking the credibility of Ronald Johnson, a witness who had previously identified the defendant in a police lineup. The defendant allegedly described Mr. Johnson as the brother of another individual named "Desmond”. The defendant allegedly informed Mr. Jennings that in June or July of 1992, Desmond had testified against the defendant in the Grand Jury. Defendant believed Desmond was the only witness who could have testified against him. Shortly thereafter, in September of 1992, detectives had come to defendant’s residence seeking to question him. Thereafter, a search warrant was obtained and around December of 1992 the police returned with an arrest warrant for the defendant.
According to Jennings, the defendant also informed him that on January 2, 1993, Desmond was at a nightclub on Rogers Avenue, in Brooklyn. There came a time that evening when Desmond was called outside of the bar by another individual. Once outside, an individual named "Shorty”, who was wearing a hood on his head, shot Desmond several times with a Tech-9 pistol. "Shorty” then returned to the defendant’s home and informed him of the details of the killing.
Mr. Jennings testified that in January of 1993 he was incarcerated at the Oneida Correctional Facility, in Rome, New York; except for a three-month period in the spring of 1990 he was continuously incarcerated at Oneida Correctional Facility from January of 1989 until January of 1994. Mr. Jennings testified that he had no prior knowledge of either Desmond Edwards or Abraham Lodge, had never been to the vicinity of Rogers Avenue, in Brooklyn, and never saw any police *543 paperwork regarding the Desmond Edwards killing. Mr. Jennings did, however, review defendant’s copies of certain police reports detailing the death of Abraham Lodge, which the defendant showed Jennings during the course of their conversations together.
Mr. Jennings stated that in return for his testimony at the Sirois hearing and at defendant’s subsequent murder trial, Detective Guinane had agreed to testify before the Parole Board on defendant’s behalf and inform the Parole Board of defendant’s cooperation in this matter. Assistant District Attorney Baker, who interviewed Mr. Jennings and who represented the Kings County District Attorney’s Office at this hearing, also agreed that in exchange for Mr. Jennings’ cooperation she would write a favorable letter to the Parole Board on Mr. Jennings’ behalf.
CONCLUSIONS OF LAW
The People seek to introduce into evidence, at defendant’s murder trial, a sworn audiotaped statement made by Desmond Edwards to Assistant District Attorney Terry Winston and Detective Guinane. For such evidence to be admitted for the truth of the matter asserted, two barriers must be overcome: the law prohibiting the use of hearsay and the Constitution’s Confrontation Clause.
It is axiomatic that the audiotaped statement of the late Desmond Edwards is hearsay because it is an extrajudicial declaration offered to prove the truth of the matter asserted (Fisch, New York Evidence § 756 et seq. [2d ed]; Richardson, Evidence § 200 et seq. [Prince 10th ed]; Fed Rules Evid rule 801 [c]). Thus, the audiotape is inadmissible as evidence unless an exception to the hearsay rule applies (see, Fed Rules Evid, rule 802) or if it has "sufficient indicia of reliability” to permit its admission at trial (United States v Thevis, 665 F2d 616, 633, n 17, cert denied sub nom. 459 US 825; United States v Cheramie, 51 F3d 538; People v Small, 177 AD2d 669, 670, lv denied 79 NY2d 953; People v Sweeper, 122 Misc 2d 386, 394). Unlike Federal rule 804 (b) (5), in New York there is no residual, or "catch-all”, exception to the hearsay rule which admits hearsay statements provided they have sufficient "indicia of reliability”.
Under CPL 670.10, the admissibility of prior testimony of a witness is limited to three specifically enumerated categories. Prior testimony will be admitted only when the witness is "unavailable” and only when the testimony occurred at: "(a) a trial of an accusatory instrument, or (b) a hearing upon a *544 felony complaint * * * or (c) an examination of such witness conditionally” (CPL 670.10 [1]). Appellate courts have strictly construed this statute and have limited its ambit to the three types of testimony enumerated in the statute (People v Phan, 150 Misc 2d 435; see, People v Ayala, 75 NY2d 422, cert denied sub nom. Ayala v Leonardo, — US —, 115 S Ct 232; People v Peterson, 160 AD2d 563, lv denied 76 NY2d 863; People v Johnson, 145 AD2d 573, lv denied 73 NY2d 923 [suppression hearing testimony inadmissible]; People v Harding, 37 NY2d 130 [testimony at police department disciplinary hearing inadmissible]).
Even if Desmond Edwards’ audiotaped statement hurdled the hearsay rule and CPL 670.10, it would still be subjected to the Confrontation Clause of the United States Constitution: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him” (US Const 6th Amend). The Confrontation Clause seeks to ensure that witnesses against an accused testify under oath at trial, where they face the defendant, are subject to cross-examination and where a jury can evaluate their demeanor.
Under certain circumstances a defendant may, by his own misconduct, waive his right to confront the witnesses against him. "[T]he right of confrontation may be waived not only by consent, but 'at times even by misconduct’ * * * 'Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong.’ Thus, if a witness’ silence is procured by the defendant himself, whether by chicanery * * * by threats * * * or by actual violence or murder * * * the defendant cannot then assert his confrontation clause rights in order to prevent prior grand jury testimony of that witness from being admitted against him. Any other result would mock the very system of justice the confrontation clause was designed to protect.” (United States v Mastrangelo, 693 F2d 269, 272-273 [citations omitted].)
"The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him * * * if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege” (Reynolds v United States, 98 US 145, 158; People v Pappalardo, 152 Misc 2d 364, 369).
*545 New York courts have also recognized that a defendant’s misconduct may operate as a waiver of his hearsay and Confrontation Clause objections to the admission of certain pretrial statements (Matter of Holtzman v Hellenbrand, 92 AD2d 405, supra; see also, People v Geraci, 85 NY2d 359; People v Tuzzio, 201 AD2d 595, lv denied 83 NY2d 877; People v Small, 177 AD2d 669, lv denied 79 NY2d 953, supra; People v Pappalardo, 152 Misc 2d 364, supra; People v Sweeper, 122 Misc 2d 386, supra).
Although this legal concept is often couched in terms of a "waiver”, recently the Court of Appeals determined "it is more realistically described as a forfeiture dictated by sound public policy” (People v Geraci, supra, at 366).
Since it is now clear that extrajudicial statements of a witness can be admitted if the People prove by "clear and convincing evidence” (People v Geraci, supra, at 367) that the witness’ unavailability was procured by misconduct on the part of the defendant, one must now determine what type of statements will be admitted.
Most of the case law specifically limits its discussion to the admission of prior Grand Jury testimony of a witness (People v Geraci, supra; People v Tuzzio, 201 AD2d 595, supra; People v Small, 177 AD2d 669, supra; People v Hamilton, 127 AD2d 691, affd 70 NY2d 987; Matter of Holtzman v Hellenbrand, 92 AD2d 405, supra; People v Pappalardo, 152 Misc 2d 364, supra; People v Sweeper, 122 Misc 2d 386, supra). In United States v Mastrangelo (693 F2d 269) the court permitted the admission of Grand Jury testimony under the residual exception to the hearsay rule (Fed Rules Evid, rule 804 [b] [5]) which permits the introduction of hearsay statements if such statements have the "equivalent circumstantial guarantees of trustworthiness.” Matter of Holtzman v Hellenbrand (92 AD2d 405, supra) held that the reasoning in Mastrangelo is "as relevant to cases arising in our State courts as it is in the Federal system” (supra, at 415).
Subsequently, our State courts have also evaluated the context in which the proposed statement was made, to determine whether the statement has "sufficient indicia of reliability to permit its admission at the trial” (People v Tuzzio, supra, at 596; People v Small, supra, at 670; People v Sweeper, supra, at 394).
While Geraci’s primary holding concerned the standard of proof to be established at a Sirois hearing, the Court’s holding greatly liberalizes the types of statements that can be admit *546 ted, provided the "clear and convincing” standard is met. "[U]nlike most exceptions to the rule against hearsay, the exception at issue here is justified not by the inherent reliability of the evidence * * * but rather by the public policy of reducing the incentive to tamper with witnesses” (85 NY2d, supra, at 367-368 [citations omitted; emphasis added]). "[W]e conclude that out-of-court statements, including Grand Jury testimony, may be admitted as direct evidence where the witness is unavailable to testify at trial and the proof establishes that the witness’ unavailability was procured by misconduct on the part of the defendant” (supra, at 366 [emphasis added]).
After Geraci (supra), a hearing court no longer has to determine whether the statement tendered by the prosecution is inherently reliable. All a Judge has to determine is whethér a pretrial statement was made by a witness and whether that witness is unavailable to testify at trial due to the misconduct of the defendant. Nor is Geraci limited to Grand Jury testimony. The language of the opinion is not so limited, and the policy of the Geraci-Mastrangelo rule — precluding a defendant from benefiting from his own misconduct toward a witness — is applicable to other kinds of statements as well.
Two Federal appeals courts have admitted into evidence at trial extrajudicial statements other than the Grand Jury testimony of an unavailable witness. In United States v Aguiar (975 F2d 45) the Second Circuit ruled that the holding of Mastrangelo (supra) is not limited to sworn Grand Jury testimony. The panel permitted the unsworn statements made by a witness into evidence after it was proven, at an evidentiary hearing, that the witness recanted his prior testimony after being threatened by the defendant. "Although Mastrangelo involved sworn grand jury testimony, we did not there, and do not here, limit its rationale to such testimony. A defendant who procures a witness’s absence waives the right of confrontation for all purposes with regard to that witness, not just to the admission of sworn hearsay statements” (supra, at 47).
In Rice v Marshall (709 F2d 1100, cert denied 465 US 1034) the Sixth Circuit admitted into evidence the signed statement of a witness to the police, because a hearing determined that the witness was threatened into silence by the defendant or his "functionaries” (supra, at 1104).[2]
In the case at bar, this court holds that the sworn audio-taped statement of Desmond Edwards may be admitted into *547 evidence, but only if the People prove by “clear and convincing” evidence that Mr. Edwards’ unavailability was procured by misconduct on the part of the defendant.
APPLICATION OF THE BURDEN OF PROOF
Circumstantial evidence may be used, in whole or in part, to establish whether a witness’ unavailability was procured by the defendant (People v Geraci, supra, at 369). However, a “hearing court’s ultimate determination cannot be sustained [if it is] not supported by the evidence, but rests solely upon speculation and conjecture which, at best, may rise to the level of suspicion as to the defendant’s involvement in [a witness’] refusal to testify” (People v Hamilton, 127 AD2d 691, 692-693).
In the case at bar, Detective Guinane could not independently corroborate any of the pertinent details given to him by Kevin Jennings. While Detective Guinane had investigated several leads, he had not obtained any credible information as to who killed Desmond Edwards.
The sole source of any information at the Sirois hearing as to the defendant’s involvement in the death of Desmond Edwards came from the testimony of Kevin Jennings. The court had an opportunity to listen to Kevin Jennings, to observe his demeanor and conduct on the witness stand and to listen to his responses to the questions addressed to him.
Kevin Jennings has an extensive criminal history, commencing in 1978, and continuing to the time of his present incarceration.
The majority of his prior convictions involve some type of dishonesty. Mr. Jennings’ prior criminal contacts primarily involved his attempts to cheat, con, swindle or steal property that didn’t belong to him. He testified, at great lengths, to some of the individual schemes and con jobs he had previously performed. Mr. Jennings was particularly frank about his efforts to manipulate the criminal justice system.
Detective Guinane and Assistant District Attorney Baker both indicated they would inform the Parole Board about defendant’s cooperation in the prosecution of the defendant. Based on Mr. Jennings’ history, it would not be uncharacteristic of him to commit perjury in order to benefit his personal situation.
In this court’s view, Kevin Jennings is not a witness whose testimony establishes by “clear and convincing” evidence the defendant’s involvement in Desmond Edwards’ death.
*548 CONCLUSION
Accordingly, the People’s application to introduce into evidence, at defendant’s murder trial for the death of Abraham Lodge, the sworn audiotaped statement of the late Desmond Edwards is hereby denied. This decision does not preclude the People from calling Kevin Jennings to the witness stand nor does it limit or preclude the contents of Kevin Jennings’ testimony. Those issues are left for the determination of the trial court.[3]

. See, Matter of Holtzman v Hellenbrand, 92 AD2d 405.

. Rice v Marshall (supra) also held that the proffered evidence must contain " 'other strong indices of reliability surrounding the evidence’ ” (supra, at 1102).

. Defendant was subsequently convicted, by a jury, of murder in the second degree. Kevin Jennings testified on behalf of the prosecution.