# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**664**

**KA 14-02271**

PRESENT: SMITH, J.P., CENTRA, PERADOTTO, SCONIERS, AND WHALEN, JJ.

---

IN THE MATTER OF BOARD OF EXAMINERS OF SEX
OFFENDERS OF THE STATE OF NEW YORK,
PETITIONER-APPELLANT,

V                                              MEMORANDUM AND ORDER

JAMES D'AGOSTINO, RESPONDENT-RESPONDENT.

---

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL
OF COUNSEL), FOR PETITIONER-APPELLANT.

STUART J. LAROSE, SYRACUSE, FOR RESPONDENT-RESPONDENT.

---

Appeal from a revised order of the Supreme Court, Onondaga County
(John J. Brunetti, A.J.), dated April 3, 2014. The revised order
determined that the offense of which respondent was convicted in
Cambodia was not a registerable offense pursuant to the Sex Offender
Registration Act.

It is hereby ORDERED that the revised order so appealed from is
unanimously reversed on the law without costs and the matter is
remitted to Supreme Court, Onondaga County, for a risk level
determination in compliance with Correction Law § 168-n (3).

Memorandum: The Board of Examiners of Sex Offenders of the State
of New York (Board) commenced this proceeding pursuant to the Sex
Offender Registration Act ([SORA] Correction Law § 168 *et seq*.),
seeking an order determining respondent's risk level. The Board
appeals from a revised order determining, inter alia, that the offense
upon which respondent "was convicted in the Cambodian Court is not
registerable." We disagree, and we therefore reverse the revised
order and remit the matter to Supreme Court for a risk level
determination in compliance with Correction Law § 168-n (3).

The record establishes, and respondent does not contest, that he
was convicted in Cambodia of "Child Prostitution and Exploitation" and
sentenced to four years in prison in 2011. Respondent also concedes
that his conviction was affirmed on appeal in Cambodia, although his
sentence was reduced to 18 months. After respondent served that
sentence and returned to the State of New York, the Board determined
that the Cambodian offense was a registerable offense, requiring
respondent to be classified pursuant to SORA. The Board prepared a
case summary and risk assessment instrument, and recommended that
respondent be classified as a level two risk. In preparing those

documents, the Board obtained a certificate of conviction and a translation of the record from the Cambodian trial court proceedings, which was provided by the Cambodian government and translated by Interpol.  Neither party disputes the accuracy of the record or the translation.

Respondent opposed the Board's determination, contending that he should not be required to register as a sex offender because the Cambodian conviction did not comport with due process.  After a hearing, Supreme Court issued a revised decision and order, concluding that the crime of which respondent had been convicted met the statutory requirements of a registerable offense (*see* Correction Law § 168-a [2] [a]), but further concluding that the conviction was obtained in violation of respondent's right to due process because, at trial, the victim recanted his accusations of sexual conduct.  The court concluded that the conviction was based solely upon the testimony of a police officer to whom the victim initially reported respondent's sexual conduct.  Based on the foregoing conclusions, the court further concluded that respondent had not committed a registerable offense, and declined to complete the risk level assessment and make a risk level determination.  The Board, which has been represented throughout the proceedings by the Onondaga County District Attorney (*see* Correction Law §§ 168-k [2]; 168-n [3]), appeals.

Initially, we reject the Board's contention that respondent may not challenge whether he committed a registerable offense in the context of a SORA proceeding.  To the contrary, the Court of Appeals has unequivocally stated that a "determination by the Board . . . that a person who committed an offense in another state must register in New York is reviewable in a proceeding to determine the offender's risk level" (*People v Liden*, 19 NY3d 271, 273).  We also reject the Board's contention that *Liden* is limited to convictions from other states and, therefore, does not apply to the situation before us.  The Court's determination in *Liden* was based on its conclusion that judicial efficiency and "good policy" are both promoted by allowing a challenge to the registerability of an offense in the same proceeding in which the court determines an offender's risk level (*id*. at 276), and we conclude that those considerations apply equally to challenges to the registerability of convictions from other countries.

We agree, however, with the Board's further contention that the court erred in determining that respondent had not committed a registrable offense.  Contrary to respondent's contention and the court's conclusion, respondent failed to establish that he was denied due process by the Cambodian Court, and Supreme Court therefore erred in determining that the Cambodian conviction did not constitute a registerable offense for purposes of determining respondent's risk level classification pursuant to SORA.

SORA imposes registration requirements on " '[s]ex offender[s],' " i.e., "any person who is convicted of" certain sex offenses enumerated in the statute (Correction Law § 168-a [1]). Respondent correctly concedes that the offense of which he was

convicted had all of the essential elements of a sex offense, i.e., patronizing a prostitute in the third degree (Penal Law § 230.04), when the person patronized is less than 17 years old (*see* Correction Law § 168-a [2] [a] [i]; [d] [i]).  Respondent contends, however, that the offense does not fall within the ambit of SORA because he was denied due process by the Cambodian Court.  Even assuming, arguendo, that respondent was required to establish by a mere preponderance of the evidence that the offense is not registerable (*see generally People v Gillotti*, 23 NY3d 841, 861-862), we conclude that he failed to meet that burden because he failed to establish that he was denied due process.

Initially, we note that the Board submitted the transcript of the trial in Cambodia, and the parties agree that respondent appealed his conviction in that country.  Respondent failed to submit any evidence establishing the result of that appeal other than a reduction of his sentence, however, and thus he failed to establish that he was denied due process.  Furthermore, respondent also failed to submit any evidence regarding whether he had, or exercised, the right to pursue a further appeal.  Inasmuch as it appears that he had the right to appeal to the Cambodian Supreme Court (*see e.g. United States v Boyajian*, 2014 WL 6750230 at *2-3), "there already exist[s at least one] procedural vehicle[] for challenging the constitutional propriety of [his conviction] under the facts presented here . . . Thus, a new, judicially created, remedy is not needed in this situation to ensure protection of the accused's right to due process of law" (*People v Knack*, 72 NY2d 825, 827).

In any event, even assuming, arguendo, that respondent's challenge is procedurally proper, he failed to establish that he was denied due process in light of the evidence presented at his trial. He contended, and Supreme Court concluded, that the 15-year-old victim recanted his testimony that respondent engaged in sexual activity with him and that there was no other evidence that he committed the crime charged and, thus, that he was denied due process because he was convicted solely upon hearsay evidence, i.e., a police officer's testimony regarding the victim's prior statements.  That conclusion is belied by the evidence in the record from the Cambodian trial.

First, the 15-year-old male victim testified at trial and, although he claimed at trial that he did not engage in sexual activity with respondent, he admitted that he had previously told the police officer that such activity had occurred.  Consequently, the record establishes that the police officer did not invent that version of the events.  In addition, the victim testified that he initially told the police officer that he and respondent engaged in sexual activity because the officer threatened him, but the officer denied making threats, and teachers from the victim's school testified that they were present when the officer spoke with the victim, and that the officer did not threaten the victim.  Additionally, the victim's hospital records were introduced into evidence, and they indicated that the victim "was sexually abused (*clarified by him*) but left [with] no burns, cuts or tears" (emphasis added).  Thus, the victim reported the sexual activity at a time when he was not threatened by

the police officer, undermining the victim's testimony that he reported the sexual activity only because he was threatened.  Also, despite denying that he engaged in sexual activity with the victim, respondent admitted in his trial testimony that he slept under blankets with the victim and several of the victim's brothers, and that he bathed in a restaurant pool with them.  An employee of that restaurant testified that respondent "took baths with three children, but [she saw respondent] playing with the penis of only one child." Consequently, there was direct evidence of sexual contact between respondent and the victim, circumstantially corroborating the victim's initial statement and providing indicia that it was reliable. Finally, there was significant evidence, including respondent's testimony at trial, establishing that he gave gifts, money, and other financial consideration to the victim's family, before and after the sexual activity was alleged to have occurred.

Based on that evidence, we conclude that respondent failed to establish that the conviction violated his due process rights.  In the State of New York, "[w]here the People establish that a witness is unwilling to testify due to the defendant's own conduct, or by the actions of others 'with the defendant's knowing acquiescence,' defendant forfeits the right to confrontation, and [the witness's] out-of-court statements are admissible . . . This exception is based on 'the public policy of reducing the incentive to tamper with witnesses' " (*People v Dubarry*, 25 NY3d 161, 174; *see People v Alston*, 27 AD3d 311, 312, *lv denied* 7 NY3d 751; *see generally People v Geraci*, 85 NY2d 359, 369-370; *Matter of Holtzman v Hellenbrand*, 92 AD2d 405, 410-415).  Here, respondent's due process rights were not violated when the Cambodian Court concluded that respondent bribed the witnesses against him so that they would not testify against him, nor when that court relied upon those witnesses's prior statements implicating respondent inasmuch as the statements "bore sufficient indicia of reliability" (*Alston*, 27 AD3d at 312).  Consequently, we conclude that "the statements were not 'so devoid of reliability as to offend due process' " (*People v Wilson*, 115 AD3d 891, 891, *lv denied* 24 NY3d 966, quoting *People v Cotto*, 92 NY2d 68, 78).

Entered:  July 2, 2015                        Frances E. Cafarell
                                              Clerk of the Court