OPINION OF THE COURT
Caesar Cirigliano, J.
The defendant, Earl Banks, has been charged with murder in the second degree. The People allege that the defendant *602 was involved in the murder of an eyewitness to this crime and seek, under the principles established in United States v Mastrangelo (693 F2d 269 [2d Cir 1982], on remand 722 F2d 13, cert denied 467 US 1204 [1984]) and Matter of Holtzman v Hellenbrand (92 AD2d 405 [2d Dept 1983]), to introduce the witness’s Grand Jury testimony at the defendant’s trial on the ground that the defendant by his own misconduct waived his right to confront this witness. The witness’s Grand Jury testimony is admissible only if the People prove the defendant’s complicity in the murder of this witness by clear and convincing evidence. (United States v Thevis, 665 F2d 616 [5th Cir 1982], cert denied sub nom. Evans v United States, 456 US 1008; Matter of Holtzman v Hellenbrand, 92 AD2d 405, supra.)
Courts have imposed the stringent burden of proof by clear and convincing evidence recognizing that the receipt of an unavailable witness’s Grand Jury testimony deprives the defendant of his constitutional right to confront the witness and places potentially unreliable hearsay testimony before the jury. Here, in order to decide whether such testimony is admissible, I must assess the sufficiency of the wholly circumstantial evidence adduced by the People in support of the conclusion that the defendant was involved in the murder of this witness.
This case thus presents a question of first impression because it has not yet been decided whether the well-settled standard for measuring the sufficiency of circumstantial evidence must be applied in the Mastrangelo-Hellenbrand context where the burden of proof is by clear and convincing evidence rather than by proof beyond a reasonable doubt.
In deciding this issue, I am well aware of the substantial interests at stake on both sides. If this testimony is admitted, the defendant will be deprived of his Sixth Amendment right to confront a crucial witness against him. Further, hearsay testimony, with its inherent deficiencies, will be placed before the jury that is to decide the ultimate question of guilt or innocence. On the other hand, if this evidence is excluded, the People’s ability to proceed with this murder prosecution may well be seriously compromised.
Moreover, my determination here must rest exclusively on circumstantial evidence. As discussed more thoroughly below, the same standard for assessing the sufficiency of wholly circumstantial evidence is used in civil cases as well as in criminal cases. In criminal cases, where the burden of proof is *603 beyond a reasonable doubt, the circumstantial evidence must exclude beyond a reasonable doubt every reasonable hypothesis of innocence. In civil cases, where the burden of proof is by a preponderance of the evidence, the circumstantial evidence must fairly and reasonably exclude other reasonable hypotheses.
Balancing these considerations, I hold that the People, coextensive with their burden of proving the defendant’s complicity in the murder of the witness by clear and convincing evidence, must demonstrate that the circumstances logically and reasonably lead to but one conclusion — that the defendant was involved in the murder of the witness — and clearly and convincingly exclude any reasonable hypothesis to the contrary. I conclude that this standard has not been met in this case and therefore the Grand Jury testimony of the witness will not be admitted.
THE FACTS
The following circumstantial facts were established by credible, direct evidence.* On December 20, 1988, Oscar Brown testified before a Grand Jury in connection with a shooting that occurred on December 14, 1988. Oscar Brown was the only civilian witness to testify before the Grand Jury. He provided an eyewitness account of the murder of a man he knew as Ralph by an individual whom he described as a security guard, but who was not wearing a uniform.
Beginning in the latter part of April of 1989 and continuing until June 6, 1989, Oscar Brown’s mother, Delores Brown, received weekly telephone calls from a man who identified himself as "Ali”.
Mrs. Brown testified that "the substance of the calls were about this person that was in jail, Banks, about that he was supposedly was put in the building as a security guard and that he had children that he was trying to support, was holding down two jobs, and that they didn’t feel, whoever they were, that this Ali, that he should be in jail”. She was told that her son’s Grand Jury testimony "had this guy in jail and they didn’t feel he should be in jail.”
Ali asked Delores Brown to speak with her son and per *604 suade him to change his testimony or not testify. Ali also asked her to testify on Banks’ behalf and say that her son was á drug addict and that he had not seen what he claimed to have seen. On one occasion, the caller told her that he was calling for Ali. He asked her to call Ali if she were able to get in touch with her son and persuade him not to testify. He gave her an eight digit telephone number. The first three digits of that number would have placed it in the 914 calling area. During this time, the defendant, who was also known by the names of Ali Kuhi and Mustapha, was confined to a city correctional facility.
Each time Mrs. Brown received one of these calls, she told the callers that she had not seen her son. The callers did not threaten her in any way and did not threaten her son. She told the police and the District Attorney’s office about these calls only after her son was killed.
Mrs. Brown spoke with her son approximately a week before his death and told him about All’s calls. Brown said that he was not about to forget what he saw and that he intended to testify at the trial when the time came.
On June 7, 1989, Oscar Brown’s body was found in front of 723 Van Sinderen Avenue, on a street described as a deserted, "oversized alley”, adjacent to an L train station. He had been shot 16 times and sustained a shotgun blast as well as bullet wounds.
Mrs. Brown told the officers who investigated his death that Oscar Brown had been "living in the streets because of his drug involvement and refusal to seek help and family guidance.” Three years before, Oscar Brown had been shot by a drug dealer to whom he had owed money. That drug dealer died in a pipe bomb blast three years ago.
When the officer investigating Brown’s death learned that he was a witness in a pending homicide case, he attempted to contact other witnesses to this homicide. He spoke to the mother of another potential witness who informed him that her son and his family had moved to Baltimore after her son was shot on December 26, 1988. She refused to provide the police with his location.
THE STANDARD OF PROOF
If the People are able to establish by clear and convincing evidence that Oscar Brown’s silence was procured through the misconduct of the defendant, the defendant " 'cannot then *605 assert his confrontation clause rights in order to prevent [Oscar Brown’s] prior grand jury testimony * * * from being admitted against him.’ ” (Matter of Holtzman v Hellenbrand, supra, 92 AD2d, at 412-413, 415; see also, United States v Mastrangelo, 693 F2d 269, supra; United States v Thevis, 665 F2d 616, supra; People v Hamilton, 127 AD2d 691 [2d Dept 1987], affd 70 NY2d 987 [1988]; People v Sweeper, 122 Misc 2d 386 [Sup Ct, NY County 1984].)
In Thevis (supra, at 631) the court held that "because confrontation rights are so integral to the accuracy of the fact-finding process and the search for truth * * * clear and convincing evidence of a waiver of this right [is required].” In Hellenbrand (supra, at 415, n 2), the Second Department held that "[i]n view of the mandate of our State Legislature to exclude the use of the witness’ Grand Jury testimony as direct evidence in a criminal trial due to its hearsay quality, the clear and convincing test is * * * appropriate”.
Here, the People have adduced wholly circumstantial evidence in order to meet their burden of proving by clear and convincing evidence the defendant’s complicity in the murder of this witness.
The well-settled standard of proof in both civil and criminal cases where the evidence is wholly circumstantial is that the inference sought to be established must be the only one that can fairly and reasonably be drawn from the facts and the facts must exclude every reasonable hypothesis to the contrary. (See, People v Guiliano, 65 NY2d 766, 768 [1985]; People v Sanchez, 61 NY2d 1022, 1024 [1984]; People v Way, 59 NY2d 361, 365 [1983]; People v Benzinger, 36 NY2d 29 [1974]; Feblot v New York Times Co., 32 NY2d 486, 495 [1973]; People v Cleague, 22 NY2d 363 [1968]; Manley v New York Tel. Co., 303 NY 18 [1951]; People v Bearden, 290 NY 478 [1943]; Ruppert v Brooklyn Hgts. R. R. Co., 154 NY 90 [1897]; Boyce Motor Lines v State of New York, 280 App Div 693, 696 [3d Dept 1952], affd 306 NY 801 [1954].)
This exacting standard for measuring the sufficiency of circumstantial evidence has been employed in both civil and criminal cases because of the complexity of the reasoning process associated with the analysis of circumstantial evidence. (Compare, People v Kennedy, 47 NY2d 196, 201 [1979], with Ruppert v Brooklyn Hgts. R. R. Co., 154 NY 90 [1897], supra.)
In Kennedy (47 NY2d, supra, at 201), the court recognized *606 that "cases involving circumstantial evidence * * * often require the [fact finder] to undertake a more complex and problematical reasoning process than do cases based on direct evidence. In the latter situation, the [fact finder] is normally concerned primarily with assessing the credibility of witnesses * * *. Where, however, the defendant’s guilt is to be proven, if at all, by circumstantial evidence only, the [fact finder] must attempt a careful and close analysis of the evidence and determine what inferences can and should be drawn not merely from each separate piece of evidence, but from the whole complex of interrelated information which is presented in evidence.”
In Ruppert (supra, at 93-94), the Court of Appeals in deciding a negligence case held:
"It is entirely true that a material fact in a civil or criminal action may be established by circumstantial evidence, but the circumstances must be such as to lead fairly and reasonably to the conclusion sought to be established and to exclude any other hypothesis fairly and reasonably. It has been said that circumstantial evidence consists in reasoning from facts which are known or proved, in order to establish such as are conjectured to exist, but the process is fatally vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture. (People v. Kennedy, 32 N. Y. 141.)
"In order to prove a fact by circumstances there should be positive proof of the facts from which the inference or conclusion is to be drawn. The circumstances themselves must be shown and not left to conjecture, and when shown it must appear that the inference sought is the only one which can fairly and reasonably be drawn from these facts. (People v. Harris, 136 N. Y. 429.)” (See also, Feblot v New York Times, 32 NY2d, supra, at 495 [applying the circumstantial evidence standard]; Manley v New York Tel. Co., 303 NY 18, supra [same]; Boyce Motor Lines v State of New York, 280 App Div, supra, at 696 [same].)
In sum, our courts have adopted a stringent standard for measuring the sufficiency of circumstantial evidence to minimize " 'a danger legitimately associated with circumstantial evidence — that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based upon probabilities of low degree’ ”. (People v Guiliano, 65 NY2d 766, 768 [1985], supra; see also, Ruppert v Brooklyn Hgts. R. R. Co., 154 NY, supra, at 93-94 ["the process is fatally *607 vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture”].)
The rationale for the adoption of the circumstantial evidence standard together with its application in civil cases where the burden of proof is by a mere preponderance of the evidence make it abundantly apparent that this standard is not reserved exclusively to cases where the People must prove guilt beyond a reasonable doubt.
This is not to say, however, that the over-all burden of proof plays no role in the analysis of circumstantial evidence. Indeed, it plays a crucial role for it informs the fact finder of the degree of certainty that must be achieved in deciding whether the circumstances lead fairly and reasonably to the conclusion sought to be established to the exclusion of other fair inferences to the contrary. (See, Addington v Texas, 441 US 418, 432-433 [1979].) Thus, where the burden of proof is beyond a reasonable doubt "it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence.” (People v Sanchez, 61 NY2d 1022, 1024 [1984] [emphasis added].) Where the burden of proof is by a preponderance of the evidence, the circumstances should "exclude any other hypothesis fairly and reasonably.” (Ruppert v Brooklyn Hgts. R. R. Co., 154 NY, supra, at 93.)
Consequently, in order for the People to prevail upon their claim, here, where the burden of proof is by clear and convincing evidence, I hold that the inference of the defendant’s complicity in the murder of the witness must flow logically and reasonably from the facts adduced and the facts must clearly and convincingly exclude every other reasonable hypothesis.
I find that the application of the circumstantial evidence standard is appropriate, though this hearing is not a proceeding where the ultimate question of civil or criminal liability will be adjudicated. The fact remains that the decision rendered here, which is one of crucial importance to both sides, will rest entirely upon the inferences to be drawn from evidence that is wholly circumstantial.
Indeed, this standard has, in essence, been recently applied to test the admissibility of evidence of an uncharged crime. (See, People v Seldon, NYLJ, Nov. 14, 1989, at 24, col 5 [App Term, First Dept].) The Seldon court, observed that "[f]or *608 'other crime’ evidence to be admissible on the issue of identity, the identity of defendant as the perpetrator of the other crime must be established by 'clear and convincing’ evidence (People v. Robinson, 68 N.Y.2d 541, 550).” (Supra, at 24, col 5.) The Seldon court found that the People had not met this "exacting standard for the admission of other crime evidence” because the evidence adduced concerning the uncharged crime was at least as consistent with the conclusion that another individual and not the defendant had committed the crime. (Supra, at 24, col 5.)
Applying the circumstantial evidence standard here, I find that the inference of the defendant’s complicity in the murder of the witness does not flow logically and naturally from the facts adduced. The telephone calls made to the witness’s mother are a crucial link in the chain of circumstantial evidence. However, there is no direct evidence, through voice identification or otherwise, that the defendant himself, or someone acting upon his request, made the calls to Mrs. Brown. While the facts are capable of supporting an inference that the defendant was responsible for these calls, it is equally plausible to infer, based upon the content of the conversations, that someone other than the defendant took it upon himself to intercede on the defendant’s behalf without his knowledge or acquiescence.
To draw the inference that the defendant made these calls and, based on this inference, to then infer that the defendant was involved in the murder of this witness, is to build inference upon inference in violation of the rule that the facts upon which the ultimate conclusion is based "must be established with certainty”. (People v Bearden, 290 NY, supra, at 480; Ruppert v Brooklyn Hgts. R. R. Co., supra.)
Moreover, these telephone calls, whatever their source, simply do not provide a logically compelling basis upon which to conclude that the defendant was involved in the murder of this witness. The caller did not threaten Mrs. Brown or her son. The calls were, instead, a benign attempt to persuade Brown to change his testimony. Notably, Mrs. Brown did not supply the caller with her son’s location and did not tell the caller that her son intended to stick to his testimony. Thus, it cannot be inferred that the murder of the witness was the result of information obtained through these calls, and any coincidence between the timing of the calls and the death of this witness is just, that — a coincidence.
*609 Undoubtedly, the defendant stood to benefit substantially from Oscar Brown’s death. However, the presence of a motive is not, without more, sufficient to support the conclusion that the defendant was involved in the murder of this witness. (See, People v Hamilton, 127 AD2d 691, supra.) The fact that another witness to this crime was shot does not lend any additional credence to this conclusion because the defendant was in no way connected to that shooting. Indeed, to rely upon motive and coincidence to fill the logical gaps in the evidence is to "elevate * * * suspicion into permissible inference.” (People v Cleague, 22 NY2d, supra, at 367.)
Finally, the circumstances here do not clearly and convincingly exclude the very reasonable hypothesis that Brown’s murder was a consequence of his involvement with drugs and his life on the street and had nothing whatsoever to do with the defendant. Narcotics-related homicides are hardly unusual. Brown’s involvement in the world of drugs may well have provided any number of individuals with the motive and the opportunity to kill him. Indeed, Brown was no stranger to drug-related violence. He was shot on another occasion by a drug dealer in a dispute over money.
I therefore hold that the People did not establish that the defendant, through his misconduct, waived his right to confront the witness. The witness’s Grand Jury testimony is not admissible at the defendant’s trial.

 Hearsay testimony was received at this hearing because such evidence is admissible at a pretrial hearing which is held to determine the admissibility of evidence at trial. (United States v Mastrangelo, 693 F2d 269, 273; see, People v Sweeper, 122 Misc 2d 386 [Sup Ct, NY County 1984].)