■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARINO DELAROSA, Appellant. [630 NYS2d 357] —Appeal by the defendant from a judgment of the County Court, Nassau County (Mackston, J.), rendered August 26, 1992, convicting him of burglary in the second degree, upon an order of the court reducing the jury verdict of burglary in the first degree, and imposing sentence. The appeal brings up for review the denial, after a hearing (Winick, J.), of that branch of the defendant's omnibus motion which was to suppress certain statements made by him to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant was indicted for a burglary committed in Nassau County. At the trial, the prosecution sought to offer evi-

dence of the defendant's participation in a prior burglary in Queens County in order to prove the defendant's identity in the Nassau burglary. At a *Ventimiglia/Sirois* hearing *(see, People v Ventimiglia,* 52 NY2d 350; *People v Sirois,* 92 AD2d 618), the detective who investigated the Queens burglary testified that a witness identified the defendant, Angel Roman, and Jose Torres as three of approximately five men who forced their way into her home in Queens County and gagged her after one of the group impersonated first a cable television repairman and then a flower deliveryman. The witness identified the three while they were in a car shortly after the burglary. The witness's husband also identified Roman as one of two Hispanic males who subsequently kidnapped and beat him. The witness's husband had also been threatened in his store by an Hispanic male who said that he and his family would be killed if the witness went to court. After the witness testified before the Grand Jury regarding the burglary in Queens County, the witness and her husband sold their family business and moved to Ecuador out of fear for their safety. The witness's husband, who had returned to this country for a brief period, also appeared in camera and gave testimony in accordance with that of the investigating detective. The Queens prosecution ended with the defendant's plea of guilty to illegal possession of a weapon.

The victim in the Nassau County burglary testified that the defendant and two other men forced their way into his home when he answered the door to receive a flower delivery. Based on the similarities between the two incidents, the prosecution sought to offer evidence of the prior Queens burglary in order to prove the defendant's identity in the Nassau burglary. Because the witness to the Queens burglary was unavailable to testify, the prosecution requested permission to use her Grand Jury testimony from the Queens prosecution.

Based on the evidence at the *Ventimiglia/Sirois* hearing, the trial court properly held that the People proved that the Queens witness's unavailability resulted from the defendant's misconduct *(see, People v Geraci,* 85 NY2d 359). Contrary to the conclusions of our dissenting colleagues, "the cumulative evidence and the inferences that logically flow therefrom were sufficient to support a determination by a rational fact finder, under the clear and convincing evidence standard, that defendant either was responsible for or had acquiesced in the conduct that rendered [the witness] unavailable" to testify *(People v Geraci, supra,* at 370).

Moreover, the hearing evidence was sufficient to establish

the defendant's identity in the prior burglary *(cf., People v Donaldson,* 138 AD2d 730), and the burglaries were sufficiently similar to establish a *modus operandi* probative on the issue of the defendant's identity in the Nassau incident *(see, People v Beam,* 57 NY2d 241, 252-253; *People v Molineux,* 168 NY 264; *People v Carlson,* 180 AD2d 743, 744). The trial court also correctly concluded that the probative value of the evidence outweighed its prejudicial effect *(see, People v Beam, supra,* at 253; *People v Ventimiglia, supra,* at 359-360). The court therefore properly allowed the Grand Jury testimony by the Queens witness to be read into evidence.

We have considered the defendant's remaining contentions and find them to be without merit. Copertino, J. P., Santucci and Friedmann, JJ., concur.

Altman, J., dissents and votes to reverse the judgment, with the following memorandum, with which Krausman, J., concurs. I respectfully dissent. The People failed to establish, by clear and convincing proof, that the unavailability of the witness in the Queens case was caused by the defendant's misconduct *(see, People v Geraci,* 85 NY2d 359; *Matter of Holtzman v Hellenbrand,* 92 AD2d 405, 415). Consequently, the trial court erred in admitting her Grand Jury testimony into evidence.

The husband of the Queens witness did not identify the defendant as one of the participants in his kidnapping or as the person who threatened him. While circumstantial evidence may be sufficient to establish the involvement of a defendant in a witness's unavailability *(see, People v Geraci, supra),* here there was no evidence to connect the defendant to the misconduct—through knowledge, complicity, planning or otherwise—except for the fact that Roman was his accomplice in the prior crime *(see, United States v Mastrangelo,* 693 F2d 269, 273). The defendant may have had a motive to silence the witness, but the trial court's conclusion that he was involved in the intimidation did not naturally flow from the evidence *(compare, People v Geraci, supra).* There were three individuals who stood to benefit from the misconduct, not just the defendant *(compare, People v Geraci, supra).* The fact that these individuals committed a crime together did not, without more, necessarily mean that they all participated in or had knowledge of a plan to intimidate the witness.

Under the circumstances, the clear and convincing standard was not satisfied *(see, People v Hamilton,* 70 NY2d 987). Since the error was not harmless, I would reverse the defendant's conviction and order a new trial.