OPINION OF THE COURT
Donald J. Mark, J.
The defendant is charged with the crimes of robbery in the first degree, criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree (two counts), and unlawful imprisonment in the first degree, as the result of an alleged incident at a store on February 26, 1998, during which the defendant and an accomplice, later identified as “Ted”,[1] forcibly stole personal property from the victim, threatened her with handguns, forcibly restrained her and coerced her into inducing a drug dealer to come to the store, where as a result of threats he disclosed the location of his drugs.
The prosecutor, claiming that the victim had been intimidated into not testifying at the trial by the same accomplice of the defendant, acting on behalf of the defendant, requested a pretrial Sirois hearing (People v Cotto, 92 NY2d 68; People v Geraci, 85 NY2d 359; see, Matter of Holtzman v Hellenbrand, 92 AD2d 405, 415) in order to introduce her Grand Jury testimony (People v Geraci, supra) and her out-of-court statements (People v Cotto, supra) at the impending trial.
The defendant objected to a Sirois hearing being conducted pretrial, since in all the decisions which permitted the introduction of an out-of-court statement of a witness because of a defendant’s misconduct, that witness was either dead, absent from the jurisdiction or refused to testify at trial, whereas in this case the victim was within the jurisdiction and subject to a material witness proceeding. This objection was overruled, as in all of those decisions the witness balked during the trial (e.g., People v Cotto, supra), such hearing would avoid the interruption of the trial (see, People v Slater, 53 AD2d 41) and one nisi prius court did conduct such a hearing (People v Banks, 146 Misc 2d 601).
At the hearing, two police investigators testified on behalf of the People as follows:
That the defendant identified Lucky and Ted as his corobbers and that Ted was the lookout; that the victim identified a photograph of Ted as someone in the neighborhood and a *497 photograph of Lucky as the second robber; that she told them that an unidentified male black stated to her it would be a good idea not to testify; that she told them that Ted had informed her father it would be a good idea if she did not testify.[2]
That the victim told them that Ted had advised her not to testify and mentioned in essence that Lucky was one of the robbers and was murdered anyway; that she told them that she had to live and work in the area and would not testify; that she told them their contacts were stressing her, she feared for her safety, she would not testify and she referred to Lucky’s murder; that she complained that Ted had followed her vehicle in his vehicle.
That they served the victim with a subpoena for trial, at which time she cried, told them it was the same as a death warrant, referred to Lucky’s death and told them Ted had spoken to her boyfriend and suggested he advise her not to testify; that they served her with a subpoena for the Sirois hearing, at which time she told them she would not testify at the hearing, she feared for her life, Ted had been warning her not to testify, and she knew Ted to be an associate of Lucky.
At the hearing, a third police investigator testified on behalf of the defendant as follows: that the victim admitted to him that her first narration of the robbery was not totally accurate because the robbers were violent men, she was afraid she would be killed and the drug dealer asked her not to relate the true version of the incident.
The defendant objected to the introduction of the testimony of the two police investigators on the basis that it consisted almost entirely of hearsay. However, all of the State cases involving a Sirois hearing have allowed police investigators to testify to the threats that convinced the intimidated witnesses to refuse to appear in court as related to them by those witnesses (People v Cotto, supra; People v Geraci,[3] supra; People v Delarosa, 218 AD2d 667; People v Tuzzio, 201 AD2d 595, lv denied 83 NY2d 877; People v Small, 177 AD2d 669, lv denied *498 79 NY2d 953; People v Banks,[4] supra; People v Sweeper, 122 Misc 2d 386). The Federal cases relating to a similar proceeding are in agreement with this principle (United States v Balano, 618 F2d 624, cert denied 449 US 840; United States v Mastrangelo, 693 F2d 269, cert denied 467 US 1204).
The victim refused to respond to the subpoena served upon her for the Sirois hearing, so a material witness order was issued; she was thereafter arrested, brought before the court and an attorney was appointed to represent her (CPL 620.20-620.40).
The investigator for the prosecutor’s office who had taken the victim into custody testified as follows: that he served the material witness order upon the victim; that she cried for 10 to 15 minutes; that she stated she could not come to court and she did not want to be the next homicide victim; and that she repeated she did not want to die.
Thus, through the hearsay testimony of the four investigators, without resort to the victim’s testimony adduced at the subsequent in camera proceeding discussed infra, the People proved by clear and convincing evidence that the victim had become unavailable to testify at the trial because she had been severely intimidated (see, People v Cotto, 92 NY2d, supra, at 75-76 [“at a Sirois hearing, the People must demonstrate by clear and convincing evidence that the defendant * * * caused a witness’s unavailability”]).
The victim, through her attorney, alleged that she was so traumatized by the threats made against her by Ted that she would not testify in the defendant’s presence, and that if she were able to testify outside of his presence, she did not want the defendant to become aware of the entire contents of her testimony.[5] The court attempted to resolve this dilemma by holding a hearing fashioned after People v Darden (34 NY2d 177). It was felt the court could safeguard the rights of the defendant by posing relevant questions to the victim and listening to her answers, while protecting the rights of the obviously distraught witness by excluding the defendant and his counsel.
With the consent of the prosecutor and over the objection of the defendant, the procedure outlined in People v Darden (supra, at 181) was then followed, viz., the victim was *499 questioned by the court outside of the presence of the defendant, his counsel and the prosecutor (the latter in an excess of caution and because that decision recited “[t]he prosecutor may be present”); the defendant’s attorney submitted the written questions he desired the court to ask the victim, and those questions were so asked; a summary report of the victim’s testimony describing the intimidation was presented to both parties; and the transcript of the testimony was sealed for possible appellate review.
The Court of Appeals has held that a defendant has the right to be present at any material stage of the trial, and a defendant’s exclusion during a hearing to determine if a prosecution witness should be allowed to testify at trial that the defendant intimidated him was reversible error (People v Turaine, 78 NY2d 871). That case can be distinguished, however, because it did not involve the situation encompassed by a Sirois hearing. Where a witness refuses to testify at trial because of a defendant’s misconduct, the defendant forfeits his rights of confrontation (People v Geraci, 85 NY2d, supra, at 366). This rule should be extended to include a situation in which the defendant’s misconduct is so egregious that the witness refuses to testify at a Sirois hearing.
This theory is not entirely without precedent. In People v Delarosa (218 AD2d 667, supra), a witness was permitted to testify in camera in a Sirois hearing that threats had been made that he and his family would be killed if he testified against the defendant.[6] In People v Mendez (208 AD2d 358), the appellate court found that the trial court erred in conducting an ex parte examination of a prosecution witness to determine whether he had been intimidated, but such inquiry would not be foreclosed in a proper case. In People v Lovett (192 AD2d 326, lv denied 82 NY2d 722), the trial court held a discussion with a witness without the defendant or his counsel to determine what steps were necessary to insure the safety and the production of the witness, and this procedure was sanctioned by the same appellate court.[7]
At the in camera proceeding, the victim corroborated in all respects the information the four investigators had testified she had disclosed to them; she also provided the following *500 testimony that linked the threats made against her by Ted to the defendant:[8] that because she was robbed by the defendant and Lucky, and Lucky was killed by his associates, the defendant and Ted, she interpreted this as a threat on her life by them if she testified;[9] that Ted told her father to advise her not to testify, because she would be testifying against the same individuals who killed Lucky;[10] that Ted told her boyfriend to advise her not to testify, because “his peoples [sic]” were in jail;[11] that during the robbery the defendant threatened to kill her many times and also threatened her that if she said anything the robbers would come back for her.[12]
In addition to the victim’s testimony, there were inferences to be drawn from the evidence that pointed to the defendant as the individual responsible for the intimidation of the victim (People v Cotto, supra, at 77 [“there was no suggestion that anyone else stood to gain from the witness’s silence”];[13] People v Geraci, supra, at 370 [“This evidence provided a logical basis for a fact finder to single out defendant rather than * * * some other interested party[14] as the moving force behind the attempt to intimidate * * * this witness”]).
As accurately claimed by the defendant, there was no direct evidence to demonstrate that the defendant orchestrated the intimidation of the victim, so the prosecutor proved the same by presenting sufficient circumstantial evidence (People v Cotto, supra, at 76 [“Because of ‘the inherently surreptitious nature of witness tampering’ circumstantial evidence may be used to ‘establish, in whole or in part, ‘that a witness’s unavailability was procured by the defendant’ ”]).
Accordingly, the transcript of the victim’s Grand Jury testimony and her out-of-court statements will be admissible upon the trial of this action.

. The last name of Ted was furnished by the police investigators; both the victim and the defendant did not know Ted’s last name.

. The victim’s father corroborated this, but he described only a male black.

. People v Geraci (supra, at 369, n 4) referred to the hearsay problem as not having been raised on appeal, but People v Cotto (supra), the later Court of Appeals case, implicitly sanctioned the receipt of hearsay evidence.

. This decision reasoned that hearsay evidence is admissible because that type of evidence is admitted at pretrial hearings.

. Contrast People v Hamilton (70 NY2d 987) and People v Johnson (250 AD2d 922), where the victims were not intimidated by or on behalf of the defendant, and, in fact, were defense-oriented.

. This was a fact mentioned in this decision; it was not a holding or dicta.

. A transcript of the proceeding was furnished to the defendant’s attorney, and this would equate with the summary furnished to the defendant’s attorney in this case.

. Had the victim given the investigators this same information, they would have been able to testify to it at the Sirois hearing; it would have been equally convincing, and its admission outside of the defendant’s presence should not dilute its efficacy.

. See, People v Small, 177 AD2d 669, supra.

. See, People v Sweeper, 122 Misc 2d, supra, at 391.

. See, People v Banks, 146 Misc 2d, supra, at 603.

. See, People v Cotto, 92 NY2d, supra, at 77.

. Ted, although an accomplice in the robbery, based upon the defendant’s statement, was never identified by the victim, and he has not been charged.

. See, n 13.