People v Kellum (2024 NY Slip Op 06629)

People v Kellum

2024 NY Slip Op 06629

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

113259 CR-23-2173
[*1]The People of the State of New York, Respondent,
v
Darnell Kellum, Appellant.

Calendar Date:November 13, 2024

Before:Aarons, J.P., Pritzker, Ceresia, McShan and Mackey, JJ.

Danielle Neroni Reilly, Albany, for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Pritzker, J.
Appeals (1) from a judgment of the Supreme Court (Peter A. Lynch, J.), rendered February 5, 2020 in Albany County, upon a verdict convicting defendant of the crimes of burglary in the second degree (two counts), aggravated criminal contempt (two counts), criminal contempt in the second degree (three counts), assault in the second degree, strangulation in the second degree and tampering with a witness in the fourth degree, and (2) by permission, from an order of said court, entered November 1, 2023 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was charged in an 11-count indictment with crimes related to the assault of the victim as well as multiple violations of an order of protection, issued on the victim's behalf, on various dates between December 2018 and February 2019. Specifically, defendant was charged with two counts of burglary in the second degree (counts 1 and 4), two counts of assault in the second degree (counts 5 and 6), strangulation in the second degree (count 7), two counts of aggravated criminal contempt (counts 2 and 8), three counts of criminal contempt in the second degree (counts 3, 9 and 10) and tampering with a witness in the fourth degree (count 11). A six-day jury trial was held, and, upon its conclusion, defendant was convicted of two counts of burglary in the second degree (counts 1 and 4), one count of assault in the second degree (count 5), strangulation in the second degree (count 7), two counts of aggravated criminal contempt (counts 2 and 8), three counts of criminal contempt in the second degree (counts 3, 9 and 10) and tampering with a witness in the fourth degree (count 11). Defendant was thereafter sentenced, as a second violent felony offender, to a prison term of 15 years, to be followed by five years of postrelease supervision, for the conviction of count 1 and a consecutive prison term of seven years, to be followed by five years of postrelease supervision, for the conviction of count 5. On the remaining counts, he was sentenced to equal or lesser concurrent terms of incarceration.
Subsequently, defendant moved pursuant to CPL 440.10 to have the judgment of conviction vacated, alleging ineffective assistance of counsel and a Brady violation. Supreme Court denied the motion without a hearing, finding, among other things, that the alleged Brady violation, although genuine, was of little or no significance given the overwhelming evidence of defendant's guilt. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
Defendant argues that the verdict as to the counts charging him with varying degrees of criminal contempt (counts 2, 3, 8, 9 and 10) is not supported by legally sufficient evidence as the People failed to prove that there was a valid order of protection in effect at the time of the crimes, as the order of protection admitted into evidence had an inaccurate [*2]date of birth. At trial, the People admitted into evidence, as People's exhibit 1, a certified copy of a temporary order of protection issued by Troy City Court on April 16, 2018 for the protection of the victim. This order of protection has an expiration date of April 15, 2019. The order indicates that defendant was to stay away from the victim, refrain from any communication with her and refrain from, among other things, assault, strangulation and criminal obstruction of breathing or blood circulation. On the order of protection, the boxes are checked indicating that defendant was advised in court of the issuance and contents of the order and that the order was personally served on defendant in court, as confirmed by defendant's signature. The events at issue in this case occurred in December 2018, January 2019 and February 2019. At trial, the People called Viviane Guicheney, a supervisory clerical assistant for Troy City Court, who testified that she recognized the order of protection, that she had created it, that she recognized defendant as the subject of the order because she was in court when the order was issued and that the order could not have been generated unless defendant was in court on the relevant date. Additionally, Guicheney testified that the order contained a typographical error as to defendant's date of birth and that defendant had been advised of the order's contents by the judge who issued it, thereby indicating that defendant must have known of the order's contents when he signed it. Viewing the foregoing in a light most favorable to the People as we must (see People v Danielson, 9 NY3d 342, 349 [2007]), "there is a valid line of reasoning and permissible inferences through which a rational jury could have found . . . beyond a reasonable doubt" that there was a valid order of protection in effect at the time of the crimes (People v Everett, 231 AD3d 1296, 1301 [3d Dept 2024]).[FN1]
We are unpersuaded by defendant's contention that the indictment must be dismissed because he appeared before the grand jury in prison garb and shackles. Although we do agree that the People erred in failing to articulate the requisite reasonable basis for the restraints, "reversal is not required since the prosecutor's cautionary instructions to the grand jury were sufficient to dispel any potential prejudice" (People v Muniz, 93 AD3d 871, 872 [3d Dept 2012], lv denied 19 NY3d 965 [2012]; see People v Shabazz, 211 AD3d 1093, 1100 [3d Dept 2022], lv denied 39 NY3d 1113 [2023]).
Defendant next argues that Supreme Court erred when it permitted the victim's grand jury testimony to be read at trial. "As a general rule, the [g]rand [j]ury testimony of an unavailable witness is inadmissible as evidence-in-chief . . . [unless] the People establish by clear and convincing evidence that the witness's unavailability was procured by misconduct on the part of the defendant" (People v Dubarry, 25 NY3d 161, 174 [2015] [internal quotation marks and citations omitted[*3]]; see People v Johnson, 250 AD2d 922, 924-925 [3d Dept 1998], affd 93 NY2d 254 [1999]; see also US Const, 6th Amend; NY Const, art I, § 6). Indeed, "[w]henever the People allege specific facts which demonstrate a distinct possibility that a criminal defendant has engaged in witness tampering, the court must grant a Sirois hearing to test the validity of that claim. A Sirois hearing is no mere formality. The Sirois hearing plays the valuable role of sentry, admitting statements not subject to cross-examination only where the requisite link between the defendant's misconduct and the witness's silence has been established" (People v Robinson, 216 AD3d 1252, 1253 [3d Dept 2023][internal quotation marks, brackets and citations omitted]; see People v Smart, 23 NY3d 213, 220-221 [2014]; People v Bryant, 200 AD3d 1483, 1490-1491 [3d Dept 2021], appeal dismissed 38 NY3d 1158 [2022]).
At the Sirois hearing, an officer with the Colonie Police Department identified defendant and testified that he had observed the injured victim when she was being treated at a local hospital the day of the February 2019 incident. While there, the victim had received several text messages, of which the officer had taken photographs, and which appeared to be from defendant. Many of these text messages threatened the victim with severe harm. Additionally, two recorded calls from the jail where defendant was being held after his arrest were admitted into evidence. In these calls, which were placed days after his arrest but before he was indicted, defendant can be heard talking to the victim and, among other things, instructing her multiple times to go to the District Attorney's office and tell them that he did not beat her, to get the charges dropped. While attempting to get the victim to cooperate with his request, defendant repeatedly assured her of his love, that he was going to change and that he did not mean to hurt her. Defendant specifically referred to a court appearance he had the evening of the call, telling the victim to recant her statement before that court appearance.
Testimony from Amanda Kyle-Sprague, the bureau chief of the crime victims unit in the Albany County District Attorney's office, indicated that she had received a telephone call from the victim months after she testified before the grand jury, wherein the victim indicated that defendant had threatened to kill her if charges against him were not dropped. Kyle-Sprague stated that the victim was very fearful, that she felt that making a police report would further antagonize defendant and that unless Kyle-Sprague could promise to keep defendant incarcerated, which she could not do, the victim would not participate in the case against him. Additionally, Kyle-Sprague indicated that she believed the victim had moved from New York shortly after her conversation and that the victim was unwilling to testify at trial because, for the first time in her life, she felt safe. Given the foregoing, we find that "[t][*4]he evidence presented at the Sirois hearing, and inferences that logically flow therefrom, were sufficient to support [Supreme Court's] determination, under the clear and convincing evidence standard, that . . . defendant's misconduct caused the [victim] to be unavailable for purposes of testifying at trial" (People v Zafor, 161 AD3d 1017, 1018 [2d Dept 2018] [internal citation omitted], lv denied 31 NY3d 1155 [2018]; see People v Nelson, 156 AD3d 1112, 1117-1118 [3d Dept 2017], lv denied, 31 NY3d 1151 [2018]; People v Brown, 308 AD2d 379, 379 [1st Dept 2003], lv denied 1 NY3d 595 [2004]). Moreover, we find unpersuasive defendant's contention that, for a witness to be unavailable, the People must seek, and the witness must ignore, a material witness order (see generally People v Shelly, 172 AD3d 1245, 1246 [2d Dept 2019], lv denied 34 NY3d 954 [2019]; People v Encarnacion, 87 AD3d 81, 88 [1st Dept 2011], lv denied 17 NY3d 952 [2011]; People v Delarosa, 218 AD2d 667, 668 [2d Dept 1995]). Thus, Supreme Court properly granted the People's motion to read the victim's grand jury testimony at trial.
Defendant's assertion that Supreme Court erred when it refused to allow him, mid-trial, to proceed pro se despite his attorney's unwillingness to pursue lines of questioning defendant wanted counsel to press is unpreserved given that defendant did not request to proceed pro se (see generally People v Cabrera, 41 NY3d 35, 42 [2023]). Similarly, to the extent defendant's complaints about counsel's failings could be understood as seeking substitute counsel, no specific factual allegations or serious complaints regarding defense counsel were made that would have obligated the court to further inquire into the merit of defendant's complaints (see People v Porto, 16 NY3d 93, 99-100 [2010]).
Defendant's final argument on direct appeal challenges his sentence as harsh and excessive. To the extent defendant is arguing that he was punished for exercising his right to a jury trial given that the sentence imposed is longer than that offered pretrial, this argument is not preserved given that defendant failed to raise it at sentencing (see People v Gentry, 218 AD3d 919, 925 [3d Dept 2023], lv denied 40 NY3d 1012 [2023]; People v Houze, 177 AD3d 1184, 1189 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]). We have reviewed the sentencing minutes and find that defendant's legal sentence is neither harsh nor severe, as his actions before, during and after trial indicated little remorse, he persistently lied to the court, failed to take responsibility for his actions and repeatedly attempted to manipulate the witness, the court and the legal process. Additionally, we take note of defendant's extensive criminal history. As such, we discern no basis upon which to disturb the imposed sentence (see People v Kilgore, 218 AD3d 1054, 1058 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]; People v Oliveras, 203 AD3d 1233, 1239-1240 [3d Dept 2022], lv denied 38 NY3d 1073 [2022]). We have [*5]reviewed defendant's remaining arguments raised on his direct appeal, including the denial of his Brady claim raised by way of a CPL 330.30 motion, and find them unavailing.
We now turn to defendant's contentions regarding the denial of his CPL 440.10 motion without a hearing. "It is well settled that a court may deny a CPL 440.10 motion without conducting a hearing if the motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts" (People v Dogan, 37 NY3d 1007, 1007-1008 [2021] [internal quotation marks, brackets and citation omitted]; see People v Santana, 179 AD3d 1299, 1303 [3d Dept 2020], lv denied 35 NY3d 973 [2020]). Further, "a court may deny a vacatur motion without a hearing if it is based on the defendant's self-serving claims that are contradicted by the record or unsupported by any other evidence" or if the motion fails to allege any basis for the motion (People v Quinn, 210 AD3d 1284, 1292 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1079 [2023]; see People v Ferrer, 224 AD3d 1092, 1096 [3d Dept 2024], lv denied 41 NY3d 1018 [2024]). Indeed, "[a] hearing is only required if the submissions show that the nonrecord facts sought to be established are material and would entitle the defendant to relief" (People v Gilmore, 200 AD3d 1184, 1193 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 927 [2022]; see People v Ferrer, 224 AD3d at 1096).
We turn first to defendant's argument regarding an alleged Brady violation due to the People's failure to disclose the disciplinary records of Frank Peris, the police officer who pulled over the vehicle in which the victim and defendant were found together, in violation of the order of protection, in January 2019. "It is axiomatic that the People have an obligation under Brady to disclose evidence and information in their possession that is both material and favorable to the defense. To establish a Brady violation, a defendant must demonstrate that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Wideman, 192 AD3d 1384, 1387 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], affd 38 NY3d 1067 [2022]). Whether undisclosed evidence is material under Brady's third prong turns on "whether there is a reasonable possibility that the verdict would have been different if the evidence had been disclosed" (People v Rong He, 34 NY3d 956, 959 [2019] [internal quotation marks, emphasis and citations omitted]; see People v Slivienski, 204 AD3d 1228, 1240 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]).
Approximately one month after the jury trial, the People sent a letter to defendant's trial counsel informing [*6]him that, a day prior, they learned of two disciplinary actions in Peris' personnel file. Specifically, the People provided defendant with information that Peris was the subject of two disciplinary actions, one in July 2012 and another in January 2019. In both incidents, Peris had acted wrongfully by using unnecessary force when arresting individuals and, in the first instance, had deceptively tried to cover up his wrongful actions. As Supreme Court properly found, the failure to disclose these records was clearly a violation of the first prong of Brady, as they are impeaching in nature (see People v Slivienski, 204 AD3d at 1239). However, defendant failed to establish the materiality element. Indeed, Peris' testimony was only relative to count four of the indictment, charging defendant with criminal contempt in the second degree relative to the January 2019 traffic stop. The victim, in her grand jury testimony, admitted to having been in the vehicle with defendant on that day. Thus, even if testimony about Peris' prior disciplinary actions had been elicited, "there is no reasonable possibility that disclosure of the evidence would have changed the result of the proceeding" (People v Slivienski, 204 AD3d at 1240 [internal quotation marks, brackets and citations omitted]; see People v Rong He, 34 NY3d at 959). Accordingly, Supreme Court did not abuse its discretion by denying this portion of defendant's CPL 440.10 motion without a hearing (see People v Dogan, 37 NY3d at 1007).
We now turn to defendant's assertion in his CPL 440.10 motion, that he did not receive the effective assistance of counsel. Specifically, defendant contends that he received ineffective assistance of counsel because, prior to being presented to the grand jury in prison garb and shackles, he had not met with an attorney, knew nothing about what was happening at the grand jury proceeding and offered testimony at the grand jury proceedings without counsel present. Even so, defendant's attorney made no objections on any of these points nor was a motion ever made to dismiss the indictment in light of the People's prejudicial conduct before the grand jury. Defendant further maintains that counsel was ineffective by failing to investigate whether the alleged protective order was operative at the time of defendant's purported violation. Additionally, defendant contends that he was denied effective counsel because his attorney refused to take defendant's suggestions seriously, which effectively denied him his right to participate in his own defense. "In New York, the standard for effective assistance is meaningful representation by counsel. Our standard is more protective than the Federal standard because even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial" (People v Debellis, 40 NY3d 431, 436 [2023]). "The meaningful representation standard requires an assessment of [*7]the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation. Counsel's performance should be objectively evaluated to determine whether it was consistent with strategic decisions of a reasonably competent attorney" (People v Watkins, ___ NY3d ___, ___, 2024 NY Slip Op 02842, *2 [2024] [internal quotation marks and citations omitted]; see People v Calafell, 211 AD3d 1114, 1120 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]).
Here, Supreme Court did not abuse its discretion in denying defendant's CPL article 440 motion in its entirety, indicating that it found defendant's claims relating to ineffective assistance of counsel unpersuasive. Specifically, the record supports the court's determination that defendant's presentation to the grand jury in shackles and prison garb did not undermine the integrity of the proceeding because a limiting instruction was provided. Defendant's further contention, that it was ineffective for trial counsel not to seek dismissal of the indictment based upon this conduct, does not amount to ineffective assistance of counsel, given that, as previously discussed, such an "argument[ ], objection[ ] or motion[ ] [would have] had little or no chance of success" (People v Bostic, 174 AD3d 1135, 1138 [3d Dept 2019], lv denied 34 NY3d 1015 [2019]). The court further noted that despite defendant's contention that he was uninformed and unprepared for the grand jury presentation, the minutes of the proceeding show that he conferred with his counsel no less than six times during the proceeding, acknowledged that he understood that he had requested to appear to give testimony, that said testimony could be used against him and that he had denied any wrongdoing during the proceeding. Additionally, the court determined that defense counsel's election not to further explore the veracity of the order of protection did not constitute ineffective assistance of counsel, as a certified copy of the order was provided to defendant both at the grand jury proceeding and at trial. The court noted that the certified copy had been presented at trial as exhibit one and that the alleged failure to request the transcript from the date of the hearing at Troy City Court by defense counsel did not constitute ineffectiveness. Finally, the court indicated that defendant believed he had received ineffective assistance because he was not allowed to effectively participate in his own defense, which the court found to be without merit. A review of the record fully supports this conclusion.
Accordingly, as to his ineffective assistance of counsel argument, defendant provided nothing to support the existence of material nonrecord facts that need to be established and would entitle him to relief; thus, a hearing was not warranted (see People v Ferrer, 224 AD3d at 1096; People v Gilmore, 200 AD3d at 1193). Furthermore, defendant's claims of ineffective assistance of counsel are self-serving and contradicted [*8]by the record (see People v Johnson, 194 AD3d 1267, 1269-1270 [3d Dept 2021]). Indeed, defendant received meaningful representation, because, given the evidence, the law and the circumstances of this case, it is clear that defendant's representation was at all times consistent with the strategic decisions of a reasonably competent attorney, as the alleged failings of counsel now pressed by defendant in his CPL article 440 appeal were grounded in sound strategy, had little or no chance of success or are mischaracterized by defendant (see People v Debellis, 40 NY3d 431, 436 [2023]; People v Calafell, 211 AD3d at 1120). We have reviewed defendant's remaining contentions relative to the denial of his CPL 440.10 motion without a hearing and find them to be without merit.
Aarons, J.P., Ceresia, McShan and Mackey, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Defendant also argues that the order of protection was issued as a result of a case that was dismissed and sealed due to a six-month adjournment in contemplation of dismissal and, as such, it was not in effect at the time of the crimes alleged in the indictment. Not only was this argument not raised at trial, making it unpreserved for this Court's review on appeal (see People v Bombard, 187 AD3d 1417, 1417 [3d Dept 2020]), but it also is not supported by the record.